368 So.2d 716 (1979)
STATE of Louisiana
v.
Farrell BENSON.
No. 63172.
Supreme Court of Louisiana.
March 5, 1979.
James Miguez, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Adam L. Ortego, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
At approximately 2:00 p. m. on July 17, 1977, a man wearing a white cowboy hat walked into the Sulphur branch of the Calcasieu Marine National Bank, took a deposit slip from a stack made available to bank customers, and left the building. Three hours later, a hatless man entered the bank and approached the teller window manned by Mary Carrier. He handed her a brown paper bag and a note scrawled on a deposit slip which stated that he had a gun and wanted all her money. Ms. Carrier handed him approximately $9300.00 in five, ten and twenty dollar bills which included an unspecified amount of "bait" money. The robber then made his escape in a truck.
At 6:30 p. m. that evening, Officer Vaughan Duhon of Troop D of the Louisiana State Police stopped Farrell Benson for having an expired safety sticker on his truck. Duhon realized that the truck fit the description of the vehicle used in the *717 robbery and contacted Chief C. J. Andrus of the Sulphur police department. When Andrus arrived at the scene, he told Benson that he was being investigated in connection with the crime and suggested that he be permitted to drive Benson's truck to the police station to avoid a towing charge. Benson agreed to this plan. When Andrus got into the truck, he moved a rag on the vehicle's seat and discovered a gun which he showed to the other officers.
Several witnesses were called to the police station where Benson was exhibited to them wearing a cowboy hat and seated at a desk. Some of the witnesses were able to identify him, but others expressed the opinion that the police had apprehended the wrong man. Benson was later released when none of the bait money was found on him or in his truck.
Over seven months after the robbery, Benson was arrested for an unrelated crime. A gun was seized at the time of his arrest. On April 5, 1978, Benson was charged by bill of information with the armed robbery of the bank, a violation of R.S. 14:64. The defendant was originally represented by Raleigh Newman, but from the time of his arraignment on April 10, 1978, James Miguez served as his attorney. Trial was set for May 1, 1978.
On April 28, 1978, Miguez requested a continuance on the basis of his poor health. Although the trial judge denied the motion, the trial was reset for June 5 when the prosecution indicated that it had no objection to the continuance. Miguez then filed a motion to suppress on May 22 and motions for a preliminary hearing and for oyer on May 26.
The motion for oyer was considered on May 31, and the defense was granted the right to discover and inspect certain items in the prosecution's possession. On June 1, the motion to suppress was denied and the preliminary examination was held. On June 2, a Friday, Miguez filed a motion for continuance in which he alleged that the defense needed additional time to obtain the services of a handwriting expert, to have independent chemical analysis made of certain physical evidence, and to subpoena witnesses. The motion was denied on June 5, and trial began. Miguez then filed for a continuance until a transcript of the preliminary examination could be made available to the defense. This motion was also denied by the trial judge. Benson was then tried, found guilty as charged, and sentenced to eighteen years at hard labor without benefit of parole, probation, or suspension of sentence.
The defendant now appeals his conviction and sentence on the basis of six assignments of error. We find merit in the first two assignments and therefore reverse.

Assignment of Error No. 1
In this assignment, the defense contends that the trial judge was in error to deny the motion for continuance filed on June 2 which concerned the need for additional time to secure the aid of a handwriting analyst, to conduct independent chemical tests of physical evidence, and to subpoena witnesses.
Article 712 of the Code of Criminal Procedure provides that a timely filed motion for continuance "may be granted, in the discretion of the court, in any case if there is good ground therefor." The jurisprudence interpreting this article has held that the granting of a motion to continue is a matter committed to the trial judge's discretion, and that a denial of the motion will not be reversed unless an abuse of discretion is demonstrated. State v. Johnson, 343 So.2d 155 (La.1977); State v. Bennett, 341 So.2d 847 (La.1976).
In the instant case, however, several factors indicate that the trial judge abused his discretion when he denied the motion insofar as it pertained to the need for additional time to contact a handwriting expert.[1] On June 5, 1978, the date of trial, less than two *718 months had elapsed since the arraignment on April 10. During part of this period the defense attorney was ill and was advised by his doctor to avoid trial work for a month. The defense attorney became aware of the handwritten note and handwriting exemplars in the state's possession only after he was granted the right to inspect these items on May 31 when the motion for oyer was heard. On the next day, Miguez was involved in the hearing on the motion to suppress and the preliminary examination and had little opportunity to obtain the services of a handwriting analyst. Defense counsel filed the motion for continuance on Friday, June 2, but the motion was not considered until the following Monday, the date on which trial was scheduled to begin. The trial judge stated in his per curiam that he believed that the defense counsel had not been zealous in preparing the case for trial because between June 1 and June 5 he had not contacted the New Orleans handwriting specialist whom he had employed in other cases.
We cannot accept the trial judge's conclusion that this inaction constituted a lack of due diligence on the part of the defense attorney. Defense counsel had at most three days, including the weekend, in which to evaluate the added strength the handwriting evidence would lend to the state's case, to decide whether to use expert testimony to counter the testimony put forward by the state, and to contact a suitable expert in the field. Even if Miguez had contacted an expert immediately upon learning of the existence of the note and the exemplars, a two or three day period might have been insufficient for an adequate evaluation of the characteristics of Benson's handwriting and the writing on the note. Under these circumstances, denying a motion for continuance when such important evidence is revealed to the defense only a matter of days before trial constitutes an abuse of discretion.
The record before this court is incomplete, and it is therefore unclear whether expert testimony concerning Benson's handwriting was introduced at trial. However, the state did not deny defense assertions that it intended to use expert testimony on this point, and the list of exhibits introduced at trial includes the robbery note, a handwriting exemplar, and an enlargement used in analyzing handwriting. Therefore, because the state apparently had the benefit of expert testimony on this issue, the trial court's decision denying the defense the opportunity to obtain experts of it own prejudiced the defendant.
This assignment of error has merit.

Assignment of Error No. 2
By his second assignment, the defendant argues that error was committed when the trial judge denied the motion for continuance which was filed in order to allow the defendant sufficient time to obtain a transcript of the preliminary hearing held on June 1. In a per curiam, the trial judge stated that he considered the motion an attempt to delay trial, and relied on information supplied by the district attorney that the only witness at the preliminary hearing was an investigator for the district attorney's office who had interviewed witnesses. The trial judge concluded that the defendant was not placed at a disadvantage by not having the transcript, apparently because a witness at trial may be impeached only with his own statements made at the preliminary hearing. C.Cr.P. 295.
The defendant in a criminal proceeding has a statutory right to a transcript of the preliminary hearing in his prosecution. C.Cr.P. 294; State v. Allen, 276 So.2d 868 (La.1973). However, we held in State v. Allen, supra, that failing to provide the defendant with the transcript of the preliminary examination was not reversible error in the absence of a showing that the crossexamination and impeachment of prosecution witnesses were not hampered at trial.
In the instant case, however, the record does not contain a transcript of the preliminary examination, nor a complete transcript of the trial; it is impossible to determine whether the defense cross-examination and impeachment of state witnesses were impaired *719 by the lack of the transcript of the preliminary examination. We are unable to assume an absence of prejudice from a silent record. The trial judge's conclusion that the transcript would not aid defendant because the prosecutor said that the only witness at the preliminary examination was an investigator may be correct, but we cannot make that determination on appeal because of the deficient record.
This assignment has merit.
For the reasons assigned, the conviction and sentence are reversed, and the case is remanded to the district court for proceedings consistent with the views expressed herein.
SUMMERS, C. J., dissents.
DENNIS, J., dissents being of the opinion that the trial judge did not abuse his discretion in denying defense counsel a continuance.
NOTES
[1] The record indicates that the other two grounds were connected with a different prosecution of the defendant.