GARRISON, Judge.
This is an appeal from a judgment of the district court granted on October 19, 1983 in accordance with a 12 man jury verdict, finding the defendant, Rudolph Wilson guilty under R.S. 14:95.1, possession of a firearm by a convicted felon. On October 26, 1983, the defendant was sentenced to serve ten (10) years at hard labor in the custody of the Department of Corrections, without benefit of probation, parole, or suspension of sentence, and ordered to pay a $1,000.00 fine or serve an additional year. From that judgment, which we affirm defendant appeals.
I. Sufficiency of the Evidence
R.S. 14:95.1 provides:
“A. It is unlawful for any person who has been convicted of first or second degree murder, manslaughter, aggravated battery, aggravated or simple rape, aggravated kidnapping, aggravated arson, aggravated or simple burglary, armed or simple robbery, burglary of a pharmacy, burglary of an inhabited dwelling, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony or any crime defined as an attempt to commit one of the above enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which if committed in this state, would be one of the above enumerated crimes, to possess a firearm or carry a concealed weapon.
B. Whoever if found guilty of violating the provision of this Section shall be imprisoned at hard labor for not less than three nor more than ten years without the benefit of probation, parole, or suspension of sentence and be fined, not less than one thousand dollars nor more than five thousand dollars.
C. Except as otherwise specifically provided, this Section shall not apply to the following cases:
(1) The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.
(2) Upon completion of sentence, probation, parole, or suspension of sentence the convicted felon shall have the right to apply to the sheriff of the parish in which he resides, or in the case of Orleans Parish the superintendent of police, for a permit to possess firearms. The felon shall be entitled to possess the firearm upon the issuing of the permit.
(3) The sheriff or superintendent of police, as the ease may be, shall immediately notify the Department of Public Safety, in writing, of the issuance of each permit granted under this Section.”
The State introduced into evidence as Exhibit S-6 a certified copy of the bill of information dated March 6, 1975 charging Rudolph Wilson with “committ(ing) a battery with a dangerous weapon upon Geneva Poche” in Case No. 248-376 and a certified copy of the jury verdict dated May 2, 1975 stating “Your honor we the jurior (sic) find the defendant guilty as charge (sic)” and signed by the foreman in that same case number.
Additionally, the defendant admitted under cross-examination that he had been convicted of aggravated battery, attempted murder, and negligent homicide. (Tr. p. 33-34). He further admitted that he also has a Federal conviction on a gun-related charge, involving shooting someone in the thigh. (Tr. p. 34). Clearly there is overwhelming evidence that defendant is a convicted felon under the appropriate crimes listed in R.S. 14:95.1.
Both officers testified that the loaded gun was retrieved from under defendant’s coat, specifically the waistband of his pants. Defendant admitted that the gun was retrieved from his waistband and that *386 he knew that he was not supposed to have a gun. (Tr. p. 34). In light of the evidence presented, the only conclusion that could be drawn is that defendant was carrying a concealed firearm and in possession of the gun. In short the evidence presented was more than sufficient to establish the elements of R.S. 14:95.1, it was overwhelming.
Defendant raises the following issues on appeal:
1. The trial court erred in denying defendant’s motion to suppress.
2. The trial court erred in denying defendant’s motion for a continuance.
3. The trial court erred in denying defendant’s motion for a mistrial.
4. The trial court erred in admitting the exhibits numbered State # 5 and State # 6.
5. The trial court erred in permitting the prosecutor to question the defendant on his prior convictions.
6. The court erred in denying defendant’s motion for a new trial.
II.Motion to Suppress
Defendant argues that the trial court erred in failing to grant its Motion to Suppress the State's exhibits numbered S-l, the Smith and Wesson .38 caliber revolver and S-2, fifteen bullets. The Motion was based on the argument that defendant was arrested without probable cause such that the subsequent search constituted an illegal search and seizure.
Officer Ronald Horst testified that he and his partner, Fred Wagner, had set up a surveillance operation at the “green” bar[1] on the corner of Clio and Baronne Streets in New Orleans on May 17, 1983. Through binoculars, Officer Horst observed the defendant reach underneath his coat in the location of his waistband and remove the revolver. The defendant showed the gun to several men who were also standing on the corner and then replaced the revolver in the waistband underneath his coat.
At this moment in time, the officers had probable cause to believe that a crime was being committed i.e., carrying a concealed weapon. C.Cr.P. Art. 215.1 provides as follows:
“A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.”
Because probable, cause existed for the warrantless search, the evidence was not illegally seized, hence the Motion to Suppress was properly denied.
III.Continuance
Defendant argues that the trial court improperly denied his motion to continue the trial of this matter and argues that if he had been granted a continuance, he would have been able to obtain the presence of witnesses who would have been able to provide exculpatory testimony on his behalf. Prior to the date of trial, defendant had been granted four continuances. On the date of trial, October 19, 1983, counsel for defendant once again moved for a continuance, which denial is the issue presently before this court. On August 10, 1983 the court had issued subpoenas to the two witnesses, when it had also continued the trial to August 25th. On August 25th, *387 trial was continued to October 13th and on October 13th trial was continued until October 19th.
The “motion” for continuance made on October 19th was not a motion under the Code of Criminal Procedure:
C.Cr.P. Article 707
“A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.”
******
C.Cr.P. Article 709
“A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.” (emphasis added).
The oral motion made at trial was by definition not a motion for a continuance, which must be in writing. While the trial court has the discretion to grant or deny a motion for a continuance, it does not have the discretion to determine what constitutes a motion in opposition to a definition clearly provided by the Code of Criminal Procedure. In certain extraordinary cases where defense counsel was genuinely taken by surprise, the requirement of a written motion has been waived. State v. Parsley, 369 So.2d 1292 (La.,1979).[2] A certain informality is tolerated in criminal procedural areas due to the effects of C.Cr.P. Art. 921, which provides:
“A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.”
In the instant case, however, no substantial right is or would have been affected and no element of surprise exists.
Even if a proper written motion had been filed, however, the trial judge was well within his discretion in denying the motion. As stated in Parsley, above:
“La.Code Crim.P. art. 712 provides that a timely filed motion for continuance ‘may be granted, in the discretion of the court, in any ease if there is ground therefor.’ We have consistently held that the granting of a motion for continuance is a matter committed to the trial judge’s discretion, and that a denial of the motion will not be reversed unless an abuse of discretion is demonstrated. State v. Benson, 368 So.2d 716 (La.1979); State v. Hammontree, 363 So.2d 1364 (La.1978); State v. Johnson, 343 So.2d 155 (La.1977). However, this court will not allow the denial of a motion for continuance to stand if it is clear that the trial court exercised that discretion unreasonably. State v. Benson, supra; State v. Winston, 327 So.2d 380 (La.1976). Whether a refusal to grant a continuance was justified depends primarily on the circumstances of a particular case. State v. Winston, supra. ” (At 1294).
There exist no circumstances which would have warranted a granting of a continuance and the trial judge not only did not abuse his discretion, but also clearly *388 acted reasonably under the circumstances of this case.'
Defendant further argues that C.Cr.P. Art. 710 requires the State to stipulate the facts required to be stated in defendant’s motion under C.Cr.P. Art. 709. C.Cr.P. Art. 710 provides:
“When a motion for a continuance is based on the absence of a material witness, and the adverse party admits that if the witness were present he would testify as stated in the motion, the court may proceed to the trial of the case. If the court is of the opinion that despite the admission, the case cannot be tried with justice to the applicant, it may require the adverse party to admit also the truth of the testimony as a condition of refusing to grant the continuance.” (emphasis added).
Defendant also relies upon State v. Boyd, 359 So.2d 931 (La.,1978) wherein the court stated:
“C.Cr.P. 710 provides that when a motion to continue is based on the absence of a material witness, it may be denied if the adverse party admits that if the witness were present he would testify as stated in the motion.” (At 936) (emphasis added).
If defendant’s argument were accepted, then in every criminal case, the defendant need only arrange to have his witnesses absent and then allege that the defendant was innocent via facts resulting in that net effect. Under defendant’s argument, the State would then be required to stipulate to the defendant’s innocence!
This argument is so blatently erroneous, so blatently frivolous, and so incredibly inane that it need not be addressed further by this court.
IV. Mistrial
After Officer Horst had testified, his partner, Officer Wagner was called to the stand. The testimony at issue is as follows:
“BY MISS BERNIE:
Q Please state your name and occupation for the record?
A Officer Fred Wagner, assigned to the special operations division of the New Orleans Police Department.
Q Were you assigned, so assigned, Officer, on May 17, 1983?
A Yes, ma’am.
Q And at that time were you working with Officer Horst?
A Yes, ma’am.
Q Would you please explain to the ladies and gentlemen of the jury the facts and circumstances surrounding that arrest?
A We had set up a surveillance mainly for narcotics. We were parked in the— BY MR. LAWRENCE:
Your Honor, I object to this at this time and I want to make a motion to this Court outside of the presence of the jury. BY THE COURT:
All right. Take the jury out.
(JURY IS REMOVED FROM THE COURTROOM)
BY THE COURT:
All right, Mr. Lawrence.
BY MR. LAWRENCE:
Your Honor, at this time I move for a mistrial based on the comment by the officer about setting up their surveillance for narcotics.
That may very well be true and a good basis for a surveillance; however, the defendant is being charged with a convicted felon in possession of a firearm. The referral to narcotics injects a reference to a crime and the evidence of which was not admissible in this case.
It was on direct examination unsolicited by the defense. I would move for a mistrial on the basis of that.
BY THE COURT:
Did the officer testify that he was sur-veiling (sic) the defendant for narcotics? BY MR. LAWRENCE:
No.
BY THE COURT:
Objection’s denied.
BY MR. LAWRENCE:
We object and move for a mistrial on this basis.
*389 BY THE COURT:
Let the objection be noted. Bring the jury back.
(THE JURY IS RETURNED TO THE COURTROOM)
BY THE COURT:
Ladies and gentlemen, from time to time during any trial there are certain legal arguments that counsel make that are of no concern of (sic) the jurors, therefore, we excuse the jurors. You are not to pay any attention to these conferences that we have. They mean nothing as far as you’re concerned.
Also, the Court will instruct you to attach no significance whatsoever to the purpose that the officers were on the scene; that is, that they were surveiling (sic) for narcotics traffic. This has nothing to do with this case and you are to attach no weight whatsoever to it.
All right.
DIRECT-EXAMINATION RESUMED BY MISS BERNIE:
Q Officer, you were testifying as to the circumstances surrounding the arrest of the defendant. Would you please proceed?
A Yes. We had set up a surveillance, my partner and myself. We were working out of the police vehicle ... (Tr. p. 9, 10, 11).
Defendant argues that the trial court improperly denied his motion for a mistrial. C.Cr.P. Art. 770 provides:
“Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.” (emphasis added).
The instant case is not a narcotics case and there is no allegation contained in the record that the defendant was engaged in any narcotic-related illegal activity. Additionally, a police officer is not a “court official” within the context of C.Cr.P. Art. 770:
“In a recent case, this Court restated its position that a policeman is not a ‘court official’ and therefore even if the policeman makes a reference to another crime, mistrial under La.C.Cr.P. Art. 770 is not required. State v. Carter, 412 So.2d 540 (La.1982). Instead, the proper remedy would be upon request of defendant an admonition to the jury to disregard the remark. La.C.Cr.P. Art. 771. In the instant case, defendant did not request an admonition for the first remark and refused the trial judge’s offer of an admonition for the second comment.
Furthermore, to trigger the need for an admonition the remark must refer to a crime alleged to have been committed by the defendant. Neither of the challenged comments is an unambiguous reference to crimes alleged to have been so committed. For these reasons, the trial judge did not err when he denied defendant’s motions for mistrial.” (emphasis added).
State v. Hayes, 414 So.2d 717, 721-722, (La., 1982). Accordingly, the trial court acted properly.
Defendant further argues that the trial court, erred in admitting Exhibits S-5, a Xerox copy of defendant’s fingerprint card, and S-6, a certified copy of defendant’s *390 conviction for aggravated battery in Case # 248-376, State v. Wilson.
Turning first to exhibit S-6, it is noted that S-6 was not admitted to impeach the credibility of Mr. Wilson, but is in fact an element of the crime R.S. 14:95.1 “any person who has been convicted of ... aggravated battery ...” Additionally, on cross-examination, the defendant admitted not only to the aggravated battery charge but to three other prior felony convictions as well.
Exhibit S-5 was introduced in conjunction with the testimony of Officer Leland Comeaux, a Records Custodian and Fingerprint Expert of N.O.P.D. Officer Comeaux testified that Mr. Wilson’s fingerprints taken on the date of the arrest matched the fingerprints of a Rudolph Wilson on record with Angola State Penitentiary such that both sets of prints came from the same man. Once again this proof bears upon an essential element of the crime, indicating that the Rudolph Wilson in the present case is in fact the same person as the Rudolph Wilson who had been previously convicted. Defendant argues that the best evidence rule, more properly called the original document rule, was violated. Officer Comeaux testified that it made absolutely no difference in his analysis whether the original fingerprint card or a copy of the card was used.
In State v. Gaskin, 412 So.2d 1007, 1011, (La.,1982), the court reiterated:
“... Moreover, we have held that La. R.S. 15:436, requiring production of the best evidence within a party’s control, is to be applied sensibly and with reason. State v. Fallon, 290 So.2d 273 (La.1974). Such was clearly the case here. Additionally, we have held that absent a showing of prejudice, a conviction will not be reversed on the ground that the best evidence was not produced. State v. Bennett, 341 So.2d 847 (La.1976). No prejudice was shown here.”
Likewise, no prejudice has been shown in the instant case.
V. New Trial
Defendant argues that the trial court improperly denied his motion for a new trial. Defendant’s motion was based on the grounds that:
“1. The verdict is against the law and the evidence because: The State of Louisiana failed to prove that defendant was previously convicted for a felony wherein he was properly advised of his constitutional rights and represented by counsel.
2. Reversible error was committed during the trial which are (sic) assigned as follows: The court denied defendant’s Motion for Continuance based on the absence of essential witnesses for the defendant.”
The question of the motion for continuance has been previously discussed and is without merit.
Turning to defendant’s other ground, it should be noted that there is absolutely no evidence in the record on either legal representation during the prior conviction or defendant’s Miranda warnings in conjunction with the prior conviction. Even if that evidence was contained in the record, however, it would be of no moment. In State v. Williams, 392 So.2d 448 (La.,1980) Justice Watson, as organ of the court stated:
“The State contends that defendants are barred from a collateral attack on their prior pleas by the decision in Lewis v. United States, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). Lewis held that 18 U.S.C.App. Section 1202(a)(1), the federal equivalent to LSA-R.S. 14:95.1, prohibits a convicted felon from possessing a firearm even if the predicate felony is subject to collateral attack on constitutional grounds. The prior conviction of Lewis was allegedly based on an uncoun-seled guilty plea. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Lewis had served his prison term but had not been pardoned or had his conviction vacated. The United States Supreme Court relied on the legislative history which reflected: ‘ ■ ■ • an intent to impose a firearms disability on any felon based on the fact of *391 conviction. Senator Long, who introduced and directed the passage of Title VII, repeatedly stressed conviction, not a “valid” conviction, and not a conviction not subject to constitutional challenge, as the criterion ... ’ 445 U.S. 62, 100 S.Ct. 919, 63 L.Ed.2d 207.
LSA-R.S. 14:95.1 is also directed at ‘... any person who has been convicted of ... ’ certain offenses. As in the federal statute: ‘No modifier is present, and nothing suggests any restriction on the scope of the term “convicted”.’ 445 U.S. 60, 100 S.Ct. 918, 63 L.Ed.2d 206. One classified as a convicted felon loses his right to bear arms. State v. Clement, 368 So.2d 1037 (La.1979). Until that status is changed and the disability removed, a convicted felon can possess a gun only if: (1) ten years have passed; or (2) a special permit is granted. LSA-R.S. 14:95.1 C(l) and (2). [Compare 18 U.S.C. Section 925(c)]. The Louisiana statute is less restrictive than 18 U.S.C. App. Section 1202, which applies to all felonies, and does not provide for a prescriptive period. The Louisiana legislature, like Congress, ‘... could rationally conclude that any felony conviction, even a allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm’ 445 U.S. 66, 100 S.Ct. 921, 63 L.Ed.2d 210. LSA-R.S. 14:95.1 represents a reasonable exercise of the police power.
‘Its purpose is to limit the possession of firearms by persons who, by their past commission of certain specified serious felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity.’ State v. Amos, 343 So.2d 166 at 168 (La.1977). That threat is not lessened by a technical defect in the prior felony conviction.
State v. Martin, 382 So.2d 933 (La.1980), decided without knowledge of United States v. Lewis, supra, held that a defect in the guilty plea to the predicate felony is a defense to a charge under LSA-R.S. 14:95.1. Dicta in State v. Virgil, 390 So.2d 520 (1980) reaffirmed Martin. However, in light of the United States Supreme Court’s guidelines in Lewis, State v. Martin is overruled. A person charged under LSA-R.S. 14:95.1 cannot attack the predicate felony on collateral constitutional grounds.” (At 449-450) (emphasis added).
Accordingly, the trial court properly denied defendant’s motion for a new trial.
The record has been examined in all other aspects and there are no errors patent on the face of the record.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.

. The bar in question has no name and is generally referred to as the "green” bar because it is painted green.

. The record now contains a written motion, but it is apparent not only from the minute entry, but also from both parties' briefs that at the time the defendant originally made the "motion” the motion was an oral one. It is interesting to note that while most pleadings in the record are undated, the written motion for continuance is dated October 19, 1983, the date of trial. This dated motion however, is of no avail as Art. 707 provides "shall be filed at least 7 days prior to ... trial.” The motion further contains no facts as required by Art. 709.